UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARRY ASZMUS,
   *Plaintiff*,

v.

METRO-NORTH RAILROAD COMPANY,
   *Defendant.*

No. 3:17-cv-2127 (VAB)

**RULING ON MOTIONS *IN LIMINE***

On the night of March 2, 2017, Garry Aszmus ("Plaintiff"), who worked as a Lineman for Metro-North Railroad Company ("Defendant," or "Metro-North"), fell after "his foot caught on unlevel black pavement." Joint Trial Mem., ECF No. 45, at 2 ("Nature of the Case . . . . Stipulations of Fact and Law[.]").

On December 20, 2017, Mr. Aszmus filed this case under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*.

Before the trial scheduled on July 8, 2019, the parties filed five motions *in limine*: (1) Mr. Aszmus moves to preclude evidence of his other accidents and injuries, and specific workplace disciplinary incidents, Pl. Mot. *in limine* to Preclude Evid. of Unrelated Accidents, Injuries or Claims and of Any Discipline, ECF No. 46; (2) Mr. Aszmus moves to preclude evidence of benefits received from the Railroad Retirement Board, Metropolitan Transportation Authority, and others, Pl. Mot. *in limine* to Preclude Any Ev. of Collateral Source Benefits from Any Source, ECF No. 47; (3) Mr. Aszmus moves to preclude Metro-North from offsetting sick leave benefits from any judgment obtained in this action, Pl. Mot. *in limine* to Preclude Metro-North from Offsetting Collateral Source Sick Leave Benefits from Any J., ECF No. 48; (4) Metro-North moves to preclude certain testimony from Mr. Aszmus's replacement medical expert, Dr.

Murphy, Mot. *in limine* Re: Medical Op. Test., ECF No. 56; and (5) Metro-North moves to preclude Plaintiff's counsel from making certain punitive damages statements to the jury, Mot. *in limine* Re: Arg. On Type of Damages Recoverable, ECF No. 57.

For the reasons below, the Court rules as follows: (1) Mr. Aszmus's motion to preclude evidence of unrelated injuries and workplace disciplinary incidents, ECF No. 46, is **DENIED** without prejudice to the possibility of renewal at trial; (2) Mr. Aszmus's motion to preclude evidence of collateral source benefits, ECF No. 47, is **DENIED** without prejudice to the possibility of renewal at trial; (3) Mr. Aszmus's motion to preclude Metro-North from offsetting sick leave benefits from any judgment obtained in this action, ECF No. 48, is **DENIED** without prejudice to the possibility of renewal at trial; (4) Metro-North's motion to preclude certain testimony from Mr. Aszmus's replacement medical expert, Dr. Murphy, ECF No. 56, is **DENIED** in part as to any testimony regarding the number of ribs allegedly fractured by Mr. Aszmus and otherwise **DENIED** without prejudice to the possibility of renewal at trial; and (5) Metro-North's motion to preclude Plaintiff's counsel from making certain punitive damages statements to the jury, ECF No. 57, is **GRANTED in part and DENIED in part** without prejudice to the possibility of renewal at trial.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

　　A. **Factual Background**

On March 2, 2017, Mr. Aszmus worked as a Lineman at Metro-North's Stamford, Connecticut station. Compl., ECF No. 1, ¶ 8; Joint Trial Mem. at 2. While "walking to the back of a Metro-North truck," he allegedly tripped on uneven and unconnected pavement and fell to the ground." Compl. ¶ 9. He seeks to hold Metro-North "legally responsible for the accident site including any maintenance, repairs, or improvements." Joint Trial Mem. at 2 (Stipulations of

Fact and Law") (citing 12/20/2018 MNR Resp. to Req. to Admit).

Mr. Aszmus alleges that Metro-North failed to properly light, level, grade, fill, inspect, and repair the area where he fell. Compl. ¶ 11. He claims that Metro-North did not have routine inspection policies in place or failed to post warnings about the condition of the pavement where he fell. *Id*. As a result of his fall, Mr. Aszmus allegedly sustained a "broken wrist, several broken ribs and severe contusions to his face." Compl. ¶ 12. Mr. Aszmus also allegedly "lost wages and benefits, incurred medical expenses, suffered physical pain and mental anguish and will continue to do so in the future, and has an impairment to his future earning capacity." Compl. ¶ 14.

B.    **Procedural Background**

On December 20, 2017, Mr. Aszmus filed his Complaint against Metro-North. Compl.

On February 23, 2018 Metro-North filed its Answer, largely denying and claiming insufficient knowledge of the claims in Mr. Aszmus's Complaint. Answer, ECF No. 12. Metro-North also asserted three affirmative defenses: (1) Mr. Aszmus's "injuries and damages were caused in whole or in part by his own carelessness and negligence" (e.g., failure to observe his surroundings), *id*. at 3; (2) Metro-North is "entitled to a set off and/or credit for payments made by it or on its behalf to the plaintiff or on the plaintiff's behalf for medical expenses and other benefits for which it is entitled to credit or right of reimbursement pursuant to any applicable collective bargaining agreement," *id*.; and (3) Mr. Aszmus "failed to properly and adequately mitigate any damages he may have suffered or sustained." *id*.

On May 10, 2019, the parties filed their joint trial memorandum, Joint Trial Mem., and motions *in limine*, ECF Nos. 46–48, 56–57.

On May 16, 2019, Plaintiff filed a supplement to the joint trial memorandum. Pl. Supp. to the Parties' Joint Trial Mem., ECF No. 58.

On May 31, 2019, the parties filed their objections to the motions *in limine*. Pl. Mem. in Opp. to Def. Mot. *in limine* Re: Medical Op. Test., ECF No. 59; Pl. Mem. in Opp. to Metro-North's Mot. *in limine* Re: Arg. on Type of Damages Recoverable, ECF No. 60; Obj. to Mot. *in limine* Re: Prior Discipline, Accidents, and Injuries, ECF No. 61; Obj. to Mot. *in limine* Re: Collateral Sources & Sick Leave, ECF No. 62.

## II.  STANDARD OF REVIEW

Motions *in limine* provide district courts the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2; *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

A court should only exclude evidence on motions *in limine* if the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (quoting *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996); *Silver v. Law Offices of Howard Lee Schiff*, P.C., No. 3:09CV912 (PCD), 2010 WL 3000053, at *5 (D. Conn. July 28, 2010).

## III. DISCUSSION

### A. Accident, Injury, and Workplace Discipline Evidence

Rule 403 permits courts to "exclude [any] relevant[1] evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Mr. Aszmus moves to preclude evidence of five accidents or injuries, mostly motorcycle-related, and five disciplinary incidents. Pl. Mot. *in limine* to Preclude Evid. of Unrelated Accidents, Injuries or Claims and of Any Discipline at 1–2. He argues that the admission of prior injuries or disciplinary incidents could prejudice the jury "to think the plaintiff is injury prone or accident prone . . . or a bad person." Pl. Mot. *in limine* to Preclude Evid. of Unrelated Accidents, Injuries or Claims and of Any Discipline at 3. He further argues that these accidents, injuries, and infractions are not relevant to this case and that any probative value from their admission would be substantially outweighed by "danger of unfair prejudice, confusing the issues and misleading the jury." *Id.* at 1; *see* FED. R. EVID. 402, 403.

Metro-North argues that "[P]laintiff's motion . . . would operate as a wholesale bar as to the introduction of any and all evidence of prior discipline, accidents, or injuries." Obj. to Mot. *in limine* Re: Prior Discipline, Accidents, and Injuries at 1. It claims not to be arguing that Mr. Aszmus is injury prone or that his March 2, 2017 accident was related to his prior accidents or any disciplinary incidents. Obj. to Mot. *in limine* Re: Prior Discipline, Accidents, and Injuries at 2. Instead, Metro North seeks to pursue the topics of Mr. Aszmus's injuries or disciplinary

---

[1] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Relevant evidence is admissible unless [barred by]: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." FED. R. EVID. 402.

5

incidents for impeachment purposes, "for example, if plaintiff testifies that he never had any prior discipline or previous work place injuries or accidents, or that he was a 'good' or 'safe' worker." *Id*. Beccause this evidence might become relevant in the course of Mr. Aszmus's testimony, *id*. at 1–2, Metro North argues that "the plaintiff's motion [is] premature as relevance could be established at trial itself." *Id*. at 2.

The Court agrees.

Because the trial has not yet occurred, this evidence has not been presented in its proper context. Notably, the Court has not observed Mr. Aszmus's testimony regarding his physical capabilities, injuries, work performance, or employment discipline history.

Accordingly, and in light of the Court's discretion to reserve judgment on a motion *in limine* until the evidence is placed in its full factual context at trial, *see Nat'l Union Fire Ins. Co. of Pittsburgh*, 937 F. Supp. at 287, Mr. Aszmus's motion, ECF No. 46, is denied without prejudice to renewal at trial.

### B.     Collateral Source Benefits Evidence

As noted above, Rule 403 permits courts to "exclude [any] relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Mr. Aszmus argues that the Court should not admit evidence of disability, sick, or other collateral source benefits received by Mr. Aszmus because "any probative value of such evidence is substantially outweighed by the danger of unfair prejudice . . . . [that] plaintiff is not . . . malingering, or exaggerating his injuries." Pl. Mot. *in limine* to Preclude Any Evid. of Collateral Source Benefits from Any Source at 1, 5; FED. R. EVID. 403. He further contends that

the admission of such evidence constitutes prejudicial error under the stricter collateral source rule governing FELA cases, as set forth in the U.S. Supreme Court's decision in *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 255 (1963) (per curium). *See Eichel*, 375 U.S. at 255 ("Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension."). Indeed, as the Supreme Court noted there, "it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937. . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act." *Id.* (internal citation omitted).

Metro-North acknowledges that "the admission of collateral source evidence in FELA actions . . . can be restricted," Obj. to Mot. *in limine* Re: Collateral Sources and Sick Leave at 2, argues that this evidence may still be admissible in limited instances, such as "where plaintiff puts his or her financial status at issue" or where a plaintiff testifies to malingering. *Id.* at 2.

The Court agrees.

The Second Circuit has held that "*Eichel* does not establish an absolute bar against the admission of [collateral benefits] evidence for purposes other than mitigation of damages." *Mills v. Energy Transp. Corp.*, 29 F. App'x 744, 745 (2d Cir. 2002) ("In this case, the evidence was introduced in support of defendant's theory that plaintiff's claim was part of a fraud designed to secure compensation from the Social Security Administration and from defendant. We do not believe that the District Court abused its discretion in determining that the probative value of the evidence was not substantially outweighed by the prejudicial effects of the evidence."); *see Hampson v. State Farm Mut. Auto Ins. Co.*, No. 112CV258BKSCFH, 2015 WL 12733388, at *4–5 (N.D.N.Y. Oct. 22, 2015) ("As Defendant notes, *Eichel* does not require a *per se* exclusion

7

of evidence of collateral benefits, such as disability benefits: a district court may admit such evidence where its probative value outweighs the danger of prejudice . . . . the Court finds that the danger of unfair prejudice from the admission of Plaintiff's receipt of SSDI benefits for the purpose of showing her alleged motivation for not returning to work outweighs the probative value of the evidence, and precludes Defendant from introducing evidence of the SSDI benefits for that purpose.") (internal citations omitted).[2]

Because the trial has not yet occurred, any collateral source benefits evidence has not been presented in context.

As a result, the Court will reserve judgment on the motion *in limine*, ECF No. 47, until the evidence is placed in its full factual context at trial. *see Nat'l Union Fire Ins. Co. of Pittsburgh*, 937 F. Supp. at 287. Consistent with *Eichel*, however, Second Circuit precedent establishes a high bar for the admissibility of collateral source evidence in FELA cases. *See Mills*, 29 F. App'x 744, 745 (2d Cir. 2002) (affirming the admission of collateral source evidence "in support of defendant's theory that plaintiff's claim was part of a fraud[.]").

Accordingly, absent Mr. Aszmus opening the door to its admission, collateral source benefits evidence likely will be precluded from being introduced during the trial.

**C.     Sick Leave Offsetting**

Evidence in support of a damages claim may be excluded on a motion *in limine*. *See John Wiley & Sons, Inc. v. Kirtsaeng*, 654 F.3d 210, 214–15 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 519 (2013) (excluding before trial, evidence of certain profits). District courts, however, may deny such motions until trial, when the record will be more sufficiently

---

[2] In *Hampson*, the Court further noted that: "At this point, absent Plaintiff's trial testimony, or a proffer of Plaintiff's trial testimony, it is premature to consider whether the receipt of SSDI benefits may be admissible regarding Plaintiff's financial status or medical insurance coverage. If Plaintiff opens the door to this evidence it may become admissible." *Id.* at 5.

developed. *In re GII Indus., Inc.*, 495 B.R. 209, 212 (Bankr. E.D.N.Y. 2010) (excluding cross motions *in limine* to exclude damages evidence prior to a bench trial "because the record is insufficiently developed at this stage in the proceedings to determine whether any of the evidence at issue should be excluded . . . . [And, it] is inappropriate to address these issues in advance of trial; they should be determined after consideration of the evidence.").

Mr. Aszmus moves to preclude Metro-North from offsetting the cost of his sick leave benefits from any judgment he might receive. Pl. Mot. *in limine* to Preclude Metro-North from Offsetting Collateral Source Sick Leave Benefits from Any J. Mr. Aszmus argues that Metro-North "is not entitled to an offset for the fringe benefit after a verdict." *Id*. at 1.

Metro-North argues that FELA permits offsetting. Obj. to Mot. *in limine* Re: Collateral Sources and Sick Leave at 1.

Under 45 U.S.C. § 55, a "common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." 45 U.S.C. § 55. Courts in the Second Circuit, however, have precluded off-setting of medical benefits when railroads have failed to reserve them as off-sets or characterized them as fringe benefits during collective bargaining. *Manes v. Metro-N. Commuter R.R.*, 801 F. Supp. 954, 965–66 (D. Conn. 1992), *aff'd sub nom. Manes v. Metro-N. Com Rail*, 990 F.2d 622 (2d Cir. 1993) ("It is settled law in this district that, absent an express provision in a railroad's collective bargaining agreement allowing the set off of medical expense payments against a future recovery by an employee, payments of an employee's medical expenses by a railroad are governed by the collateral source rule and, thus, are not subject to a set off."); *Perry v. Metro-N. Commuter R.R.*, 716 F. Supp. 61, 62–63 (D. Conn. 1989) ("The 'collateral source' rule . . . is

modified in FELA cases by 45 U.S.C. § 55 . . . . The rule which has emerged from the interaction of § 55 and the collateral source doctrine is that the availability of a set off turns not on whether the employer is the source of the payments, but on whether they constitute fringe benefits secured by the employee through his labor, or are a 'contribution' against FELA liability . . . . Metro cannot be allowed to secure unilaterally what it could have, but did not, secure by collective bargaining. Therefore, Metro has not shown that it is entitled to a set off for payment of the medical expenses. Plaintiffs may properly prove the expenses themselves as an element of damages.") (internal quotations and citations omitted) (citing *Blake v. Delaware & H. Ry. Co.*, 484 F.2d 204, 206 (2d Cir. 1973)).

Courts in this Circuit thus have precluded offsetting of third-party disability payments on similar grounds. *Brady v. Nat'l R.R. Passenger Corp.*, 714 F. Supp. 601, 602–04 (D. Conn. 1989) ("Mr. Brady received $13,289.25 in short term disability benefits from Amtrak. This sum was paid to him directly from Amtrak pursuant to its short term disability program. There is no dispute that these benefit payments are subject to set off under 45 U.S.C. Section 55 . . . . Amtrak contends that the long term disability payments to Mr. Brady made under its group insurance plan with Connecticut General Life Insurance Company ("CIGNA") must also be set off against the FELA verdict . . . . Amtrak's argument that the source of the benefit funds continues to be the determinative factor in applying 45 U.S.C. Section 55 is unpersuasive . . . . In the instant case, there is no specific language in the CIGNA policy which manifests Amtrak's intent that the disability plan be supplemental to a recovery under the FELA . . . .").

The permissibility of offsetting under 45 U.S.C. § 55, however, is a fact-intensive inquiry, requiring review of governing documents, such as the collective bargaining agreement.[3]

---

[3] Plaintiff contends that the International Brotherhood of Electrical Workers Collective Bargaining Agreement provided for Mr. Aszmus's sick leave benefit. Pl. Mot. *in limine* to Preclude Metro-North from Offsetting Collateral

*See Perry,* 716 F. Supp. at 62–63 (D. Conn. 1989) ("Metro cannot be allowed to secure unilaterally what it could have, but did not, secure by collective bargaining. Therefore, Metro has not shown that it is entitled to a set off for payment of the medical expenses."); *Brady*, 714 F. Supp. at 602–04 (D. Conn. 1989) ("In the instant case, there is no specific language in the CIGNA policy which manifests Amtrak's intent that the disability plan be supplemental to a recovery under the FELA[.]").

Accordingly, the Court will reserve judgment on the motion *in limine*, ECF No. 48, until the evidence is placed in its full factual context at trial. *See Nat'l Union Fire Ins. Co. of Pittsburgh*, 937 F. Supp. at 287; *In re GII Indus., Inc.*, 495 B.R. at 212 (excluding cross motions *in limine* to exclude damages evidence prior to a bench trial "because the record is insufficiently developed at this stage in the proceedings to determine whether any of the evidence at issue should be excluded . . . . [And, it] is inappropriate to address these issues in advance of trial; they should be determined after consideration of the evidence.").

If Mr. Aszmus demonstrates that sick leave payments were negotiated as a fringe benefit through a collective bargaining process, the Court is likely to preclude Metro-North from offsetting the payments under 45 U.S.C. § 55. *Manes*, 801 F. Supp. at 965–66 ("It is settled law in this district that, absent an express provision in a railroad's collective bargaining agreement allowing the set off of medical expense payments against a future recovery by an employee, payments of an employee's medical expenses by a railroad are governed by the collateral source

---

Source Sick Leave Benefits from Any J. At this stage of the case, the Court, however, should not be engaged in fact-finding as to whether this was the governing contract, or that Mr. Aszmus's employment was governed by the contract, or that the contract is reasonably construed to provide the sick leave benefit at issue. *See* Silver, 2010 WL 3000053, at *5 ("As the facts are presented, this court believes that reasonable jurors could disagree as to whether Defendant's error was reasonable. In one light, a juror might conclude that the absence of the "CN" or file number on Plaintiff's check was significant enough to characterize the misapplication of funds as reasonable and bona fide . . . . Accordingly, with regard to the second prong of the bona fide error defense, the court determines that it is the province of the jury to decide whether Defendant's error constitute[s] a bona fide clerical error.") (internal quotations and citations omitted).

rule and, thus, are not subject to a set off.").

### D. Dr. Murphy Testimony

District courts act as gatekeepers to exclude unreliable expert testimony. FED. R. EVID. 702, Advisory Comm. Notes to the 2000 Amendments; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that Daubert's general holding—setting forth the trial judge's general gatekeeping obligation—applies not only to testimony based on scientific knowledge, but also to testimony based on "technical" and "other specialized" knowledge") (internal citations omitted).

Federal Rule of Evidence 702 establishes a two-part reliability test for determining the admissibility of expert testimony. FED. R. EVID. 702; *Daubert*, 509 U.S. 590 ("Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability."). First, the expert must be "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the expert's opinion must meet a four-part threshold test: (1) the opinion must "help the trier of fact to understand the evidence or to determine a fact in issue," (2) it must be based on "sufficient facts or data," (3) it must be "the product of reliable principles and methods," and (4) that the expert must have "reliably applied the principles and methods to the facts of the case" to derive the opinion. FED. R. EVID. 702.

Under Federal Rule of Civil Procedure 26, witnesses "not required to provide a written report" must nevertheless disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C).

Generally, treating physicians do not have to provide written reports because they are not "retained or specially employed to provide expert testimony in the case." *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn. 2013) (citing FED. R. CIV. P. 26(a)(2)(B) and collecting cases). Treating physicians, however, "are limited in the testimony they may present at trial because . . . they are not required to make a written expert report disclosure pursuant to Rule 26(a)(2)(B)." *Barack*, 293 F.R.D. at 109. Treating physicians thus are typically limited to testifying about the medical records and their findings in the course of treatment, *id.*, though they may testify to opinions and determinations stemming from the treatment, such as treatment costs, "if supported by the proper foundation[.]" *Gibson v. CSX Transportation, Inc.*, No. 107CV156FJSRFT, 2008 WL 11355393, at *4 (N.D.N.Y. Nov. 3, 2008) ("Dr. McCormack was not required to prepare an expert report prior to his deposition or trial, *see* Rule 26(a)(2)(B), as long as his proposed testimony concerns matters within the scope of his treatment of Plaintiff, which would include testimony about Plaintiff's future treatment and, if supported by the proper foundation, the costs of such treatment.").[4]

Metro-North moves to preclude Mr. Aszmus's replacement medical expert, Dr. Murphy, from testifying to matters "outside the scope of the records previously produced from the plaintiff's treatment with [retired treating physician] Dr. Krishnamurthy" on reliability and

---

[4] Metro-North cites to *Pierce* for the proposition that testimony outside the scope of treatment requires expert disclosure under Rule 26(a)(2)(B). *Pierce v. City of New York*, No. 16 CIV. 5703 (BMC), 2017 WL 2623857, at *3 (E.D.N.Y. June 16, 2017). The decision in *Pierce*, however, where the plaintiff flagrantly disregarded court orders regarding the permissible scope of medical testimony in a complex injury case, may not be relevant to this proceeding. *See id.* at *3 ("During trial on June 15, 2017, plaintiff attempted several times to elicit improper expert testimony from his treating chiropractor witness, in direct contravention of this Court's prior rulings on the impropriety of such a tactic. Plaintiff, time and again, attempted to circumvent the Court's rulings, continuing to assert his disagreement with them . . . . [For example,] the weekend before the start of trial, and on the eve of trial, the Court issued a second written Order, offering a somewhat more detailed analysis as to why plaintiff's particular treating physicians could not testify as to general causation: 'plaintiff has suffered several significant injuries unrelated to the events of September 1, 2014, and only an expert, employing analysis that would pass muster under *Daubert*, for example a differential diagnosis, would be qualified to offer an opinion as to causation and distinguish between the effects of those unrelated injuries versus the effects of the September 1, 2014 incident.'").

timeliness grounds. Mot. *in limine* Re: Medical Op. Test. at 1. Metro-North argues that Dr. Krishnamurthy's Rule 26(a)(2)(C) disclosure, which was timely disclosed, does not provide a sufficient basis for Dr. Murphy's testimony. *Id*. at 4; FED. R. CIV. P. 26(a)(2)(C).

Mr. Aszmus argues that Dr. Murphy's testimony will comport with Dr. Krishnamurthy's —and Metro-North's—medical findings. Pl. Mem. in Opp. to Def. Mot. *in limine* Re: Medical Op. Test. at 2–3. Mr. Aszmus also argues that Dr. Murphy does not expect to testify to matters outside of the medical record, including Mr. Aszmus's permanent physical or employment limitations. Pl. Mem. in Opp. to Def. Mot. *in limine* Re: Medical Op. Test. at 2–3.

Furthermore, he argues that Dr. Krishnamurthy's finding regarding the number of fractured ribs, *see* Pl. Rule 26(a)(2)(C) Disclosure for His Treating Physician, App. A, ECF No. 59, is corroborated by Metro-North's "own medical department [which found] that plaintiff fractured his 4th, 5th, 6th and 7th ribs." Pl. Mem. in Opp. to Def. Mot. *in limine* Re: Medical Op. Test. at 2.

Metro-North argues that there is a genuine dispute as to the number of ribs fractured by Mr. Aszmus, Mot. *in limine* Re: Medical Op. Test. at 6, and that Dr. Murphy's testimony as to the number of ribs fractured will be prejudicial and not helpful to the jury. *Id*.; FED. R. EVID. 702, 703. Metro-North further argues that it consented to the late disclosure of Dr. Murphy, some seven months after the deadline for Plaintiff's expert witness disclosures, "on the condition that any testimony offered by Dr. Murphy would be limited to what was included in the previously disclosed records from Dr. Krishnamurthy." *id*.[5]

The Court disagrees in part.

To the extent Metro-North's motion to exclude Dr. Murphy's testimony is based on the

---

[5] Metro-North characterizes its motion *in limine* as a mechanism for enforcing the limitations consented to by Plaintiff's counsel. Mot. *in limine* Re: Medical Op. Test. at 2.

alleged fracture of four of Mr. Aszmus's ribs, rather than two, the motion is denied. Because Mr. Aszmus already disclosed that Dr. Krishnamurthy would testify as to the fracture of four of his ribs, Dr. Murphy will not be precluded from offering this testimony as well. *See* Pl. Mem. in Opp. to Def. Mot. *in limine* Re: Medical Op. Test. at App. A-2 (*Plaintiff's Rule 26(a)(2)(C) Disclosure for his Treating Physician*) (summarizing "the facts and opinions to which Dr. Krishnamurthy is expected to testify" and including "[a]n X-ray of the ribs taken on March 10, 2017 show[ing] nondisplaced fractures of the right fourth, fifth, sixth, and seventh anterior ribs.").

To the extent Metro-North's motion to exclude Dr. Murphy's testimony is based on anything else, because Metro-North has not alleged that Dr. Murphy is wholly unreliable, *see* FED. R. EVID. 702; *Daubert*, 509 U.S. at 597; *Kumho Tire Co.*, 526 U.S. at 141, the Court will not exclude him as a witness at this time. Rather, the issues raised by Metro-North require the Court to examine Dr. Murphy's testimony in its full factual context. *See Nat'l Union Fire Ins. Co. of Pittsburgh*, 937 F. Supp. at 287. As a result, the Court denies Defendant's motion, ECF No. 56, without prejudice to renewal at trial.

While the Court's gatekeeping function is limited to excluding unreliable expert testimony, FED. R. EVID. 702; *Daubert*, 509 U.S. at 597; *Kumho Tire Co.*, 526 U.S. at 141, there may be issues regarding compliance with Rule 26 of the Federal Rules of Civil Procedure with respect to disclosure; as a result, if Metro-North renews its motion at trial, the Court will consider the parties' agreed-upon limits to Dr. Murphy's testimony in light of Metro-North's consent to a replacement witness after the close of discovery.[6]

---

[6] While Mr. Aszmus argues that Metro-North is seeking Rule 37(c) sanctions against Plaintiff, *See* Pl. Mem. in Opp. to Def. Mot. *in limine* Re: Medical Op. Test. at 2; Fed. R. Civ. P. 37(c)(1), the Court views Metro-North's motion as an attempt to enforce the alleged agreement made between and among counsel, which sought to balance Mr.

E.  **Non-Compensatory Damages**

Metro-North seeks to preclude "as irrelevant, prejudicial, inadmissible and not helpful to the jury, any argument from counsel for the plaintiff to recover for damages other than compensatory damages." Mot. *in limine* Re: Arg. On Type of Damages Recoverable at 1; *see* FED. R. EVID. 401, 402, 403. These statements include any "argument to the jury that it should weigh 'sending a message,' 'punishing,' 'penalizing,' 'disciplining,' 'making sure this never happens again,' or 'holding accountable' Metro-North[.]" Mot. *in limine* Re: Arg. On Type of Damages Recoverable at 1.

Mr. Aszmus claims that he does not intend to tell the jury that they "should 'send a message,' 'punish,' 'penalize,' 'discipline,' or 'make sure this never happens again.'" Pl. Mem. in Opp. to Metro-North's Mot. *in limine* Re: Arg. on Type of Damages Recoverable at 1. He argues that asking the jury to hold Metro-North accountable for "the harms and losses suffered by the plaintiff" is not inflammatory or punitive and should be allowed.

The Court finds general agreement among the parties that Plaintiff's counsel should not urge the jury to "'send a message,' 'punish,' 'penalize,' 'discipline,' or 'make sure this never happens again.'" *Id*.

As a result, the Court grants, in part, Metro-North's motion, ECF No. 57, and instructs Plaintiff's counsel not to include these exact words and phrases in the closing statement to the jury. Beyond these exact words and phrases, the Court requires a fuller context to determine whether any comments concern punitive rather than only compensatory damages. *See Nat'l Union Fire Ins. Co. of Pittsburgh*, 937 F. Supp. at 287.

Accordingly, the Court denies in part Defendant's motion, ECF No. 57, without prejudice

---

Aszmus's need to substitute a witness for his retiring doctor with Metro-North's need to prepare for a trial mere months away.

to renewal at trial.

## IV. CONCLUSION

For the reasons above, Mr. Aszmus's motion to preclude evidence of unrelated injuries and workplace disciplinary incidents, ECF No. 46, is **DENIED** without prejudice to the possibility of renewal at trial; (2) Mr. Aszmus's motion to preclude evidence of collateral source benefits, ECF No. 47, is **DENIED** without prejudice to the possibility of renewal at trial; (3) Mr. Aszmus's motion to preclude Metro-North from offsetting sick leave benefits from any judgment obtained in this action, ECF No. 48, is **DENIED** without prejudice to the possibility of renewal at trial; (4) Metro-North's motion to preclude certain testimony from Mr. Aszmus's replacement medical expert, Dr. Murphy, ECF No. 56, is **DENIED** in part as to any testimony regarding the number of ribs allegedly fractured by Mr. Aszmus and otherwise **DENIED** without prejudice to the possibility of renewal at trial; and (5) Metro-North's motion to preclude Plaintiff's counsel from making certain punitive damages statements to the jury, ECF No. 57, is **GRANTED in part and DENIED in part** without prejudice to the possibility of renewal at trial.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of June, 2019.

                                            /s/ Victor A. Bolden
                                            VICTOR A. BOLDEN
                                            UNITED STATES DISTRICT JUDGE